## IRVIN v. LAMBERT et al.

No. 9289.

Court of Civil Appeals of Texas. San Antonio.

April 4, 1934.

Rehearing Denied April 25, 1934.

Sidney P. Chandler, of Corpus Christi, for appellant.

B. D. Tarlton and L. Hamilton Lowe, both of Corpus Christi, for appellee.

MURRAY, Justice.

Appellant, W. V. Irvin, instituted this suit in the district court of Nueces county against one L. R. Clarkson and appellee Mrs. M. F. Lambert, seeking to recover the sum of $2,500 earnest money posted for the faithful performance of a contract of purchase of 1,000 acres of land, together with money expended in improving the 1,000 acres.

Clarkson was sued for an accounting and settlement of the affairs of a partnership existing between appellant and Clarkson. Appellant recovered a judgment against Clarkson, and he has not appealed. Thus the controversy involved in this appeal is between Irvin and Mrs. M. F. Lambert.

The contract of purchase was as follows:

"State of Texas, County of Nueces

"This agreement made by and between Mrs. M. F. Lambert, of Refugio County, Texas, a

feme sole, hereinafter called party of the first part, and W. V. Irvin, of Nueces County, Texas, hereinafter called party of the second part. Witnesseth:

"First: For the consideration hereinafter fully stated, and subject to compliance with the conditions of this contract by the party of the second part, the party of the first part hereby agrees to sell, and binds herself to convey to the party of the second part, the following described tract and parcel of land, lying in the County of Refugio, and State of Texas, and being one thousand (1,000) acres of land described as follows: [Description of land omitted.]

"Second: The party of the second part binds himself to pay the consideration hereinafter fully stated, and to perform the conditions hereinafter described and to purchase the hereinafter described property upon the terms and conditions as herein stated.

"Third: For and in consideration of the above described tract of land, the party of the second part agrees to pay to the party of the first part at Refugio or San Antonio, Texas, at the option of the party of the first part, the sum of Sixty Thousand ($60,000.00) Dollars, which sum shall be paid as follows:—

"Upon the execution of this contract, the party of the second part agrees to make application to a Loan Company for the usual loan, such loan to be not less than Forty ($40.00) Dollars per acre, or the total sum of Forty Thousand ($40,000.00) Dollars, and immediately upon the acceptance of his application for said loan, he shall begin operations to put all of said land in cultivation, and in addition, he shall build upon said land a five-room house, and bore a water well and erect thereon a windmill, and in addition, he shall build necessary tenant houses, not less than five (5), to house a sufficient number of tenants to properly cultivate said land, and erect a barn upon said premises; all of which improvements shall be completed within six (6) months from the date of execution of this contract, provided, however, that the party of the second part shall be entitled to additional time not to exceed thirty (30) days, to complete said improvements in the event it is necessary to so extend the time on account of bad weather.

"Fourth: Upon the execution of this contract and the approval of said loan, the party of the first part shall execute a Warranty Deed, conveying said land to the party of the second part, reciting a total consideration of Sixty Thousand ($60,000.00) Dollars to be paid as follows:

"The execution and delivery by the party of the second part of one note for the sum of Forty Thousand ($40,000.00) Dollars, and one note for the sum of Five Thousand ($5,000.00) Dollars, such notes to bear even date with the Deed, and to be due on or before six (6) months from said date, and said notes to be secured by a first lien on said land, and the further sum of Fifteen Thousand ($15,000.00) Dollars to be due in three equal payments each in the sum of Five Thousand ($5,000.00) Dollars, bearing interest at the rate of eight per cent. per annum, and due and payable annually beginning with the first day of November, 1928, provided, however, that the first annual installment of interest shall be due on the first day of November, 1927; (description of notes omitted) said Deed and said notes shall be deposited in the First National Bank of Refugio, Texas, in escrow, subject to the conditions of this contract.

"Fifth: The party of the second part shall further deposit in said Bank, the sum of Two Thousand Five Hundred ($2,500.00) Dollars, which is deposited as earnest money to bind the party of the second part to this contract, and as a guaranty that he will, in good faith, perform the same, provided, however, that he shall be permitted to withdraw the same when he shall have plowed said one thousand (1,000) acres of land, and fully complied with the terms of this contract.

"Sixth: In the event of the failure of the party of the second part to comply with the terms and conditions of this contract, the said Two Thousand Five Hundred ($2,500.00) Dollars so deposited, shall be paid to the party of the first part as liquidated damages, and in the event there is no delivery of the Deed hereinabove described, no interest shall accrue on said notes executed as a part of the consideration therefor.

"Seventh: As soon as said improvements are completed, said Bank shall deliver said Deed to the party of the second part and said notes to the party of the first part, provided the said party of the second part has secured a binding agreement from a responsible Loan Company to purchase the said note of Forty Thousand ($40,000.00) Dollars hereinabove described, without recourse on the party of the first part, it being expressly agreed and understood that no delivery of the Deed shall be made unless the party of the second part has effected a loan on said premises, without recourse upon the party of the first part of the full sum of Forty Thousand ($40,000.00) Dollars, which said sum of Forty Thousand ($40,000.00) Dollars must be paid to the party

of the first part, and has paid the note of Five Thousand ($5,000.00) Dollars first hereinbefore described to the party of the first part, and in the event of failure of the party of the second part to secure said loan in the sum of Forty Thousand ($40,000.00) Dollars and to pay said Five Thousand ($5,000.00) Dollar note, this contract shall terminate and become null and void, and the sum of Two Thousand Five Hundred ($2,500.00) Dollars deposited as earnest money in said Bank, shall be paid to the party of the first part.

"Eighth: In the event of the failure of the party of the second part to fully perform and carry out his part of this agreement, then and in that event, this contract shall terminate and become null and void, and the said sum of Two Thousand Five Hundred ($2,500.00) Dollars held in escrow, shall be paid to the party of the first part as liquidated damages, and all material, work and improvements placed upon said land by party of the second part shall become the property of the party of the first part, free and clear of any lien or encumbrance whatsoever.

"Ninth: The party of the first part hereby agrees to furnish party of the second part a complete abstract of title to said property showing a good title in her subject to an oil and gas lease within thirty days from this date, and party of the second part shall have thirty days after the delivery of said abstract to have said abstract of title examined by a competent attorney and any defects of title must be pointed out in writing to party of the first. part, who shall have until six months from date hereof to correct same, and in the event said title is defective and cannot be cured within said time, then this contract shall become null and· void and shall terminate as to both parties, and the earnest money deposited herewith shall be returned to the party of the second part.

"It is expressly agreed and understood that the title to said property shall be accepted by said party of the second part subject to any oil and gas lease upon it, but party of the first part agrees to convey all her rights under any such oil and gas lease if any exists to party of the second part.

"For the faithful performance of all the terms hereof, the parties hereto bind themselves on this the 29th day of July, A. D. 1926.

"Executed in Triplicate.

"[Signed]   Mrs. M. F. Lambert,
                   "Party of the First Part.
           "W. V. Irvin,
                   "Party of the Second Part."

The cause was submitted to a jury upon twenty-two special issues. The jury's answers were in some instances favorable to appellant and in others unfavorable. The trial judge rendered judgment that plaintiff below, Irvin, take nothing as against appellee, Mrs. M. F. Lambert. Irvin has brought this appeal.

█ The first question presented is whether or not this contract is to be construed as providing for liquidated damages or only for a penalty. Of course if the contract be construed as providing only for a penalty then and in that event recovery for a breach could only be for actual damages.

██ Appellant contends that, as this contract contained several covenants, there can be no liquidated damages unless there is a provision for so much damages for the breach of each separate covenant. This is probably correct where the covenants are separate and independent undertakings, but, where the contract contains one main obligation and the other covenants have to do with incidental and subsidiary matters, and the liquidated damages are intended for a breach of the main obligation of the contract, there can be a stipulation for liquidated damages. Here the main obligation of the contract had to do with the buying and selling of 1,000 acres of land. Appellant agreed to place certain improvements upon the land, secure a purchaser for the vendor's lien notes against the land in the aggregate sum of $40,000, but all of this was incidental to his main obligation to buy this 1,000 acres of land and pay $60,000 therefor. 17 C. J. § 247, p. 951; Brownold v. Robdell, 130 App. Div. 371, 114 N. Y. S. 846.

█ Appellant next contends that the damages stipulated are so far in excess of the damages suffered that the stipulation must be treated only as a penalty and not as a provision for liquidated damages.

The contract provides that in the event appellant breaches the contract he was·to lose all improvements which he had placed on the land and also the $2,500 earnest money.

It is clear that in passing upon this question each case must be viewed in the light of its own peculiar facts. Here we have Mrs. Lambert selling 1,000 acres of land for the sum of $60,000. The contract provides for appellant taking possession of the land at once and beginning his improvements and cultivation of the land. It further provides that, in the event of a breach, no interest would be due on the notes. In determining whether or

not the stipulated damages are out of proportion to the contemplated damages, we must view this contract at the time it was executed. Appellee was to lose the use of her land for six or seven months; appellant might place a great many valuable improvements on the land, or he might fail to place any improvements thereon. The measure of appellee's damages for a breach of the contract by appellant would be the difference between the price stipulated in the contract and the market value of the land at the time of a breach. It would be exceedingly difficult to know in advance, or even estimate, what this difference in price would be.

The rule is fairly well settled that, where a contract of this nature provides for liquidated damages, it should be enforced as written. In other words, as parties bind themselves so should they be bound, unless one of the following conditions is found to exist, to wit: (1) That the damages were certain and easily ascertainable; (2) that the estimated damages at the time of the agreement were clearly disproportionate to the probable damages that could result; (3) that from all the surrounding circumstances the parties at the time stipulated the sum as a penalty rather than as true damages.

We are unable to say that any one of these exceptions applies in this case; therefore we construe the contract as meaning what it plainly says; that is, that it provides for liquidated damages.

However, as we view this contract, neither appellee nor appellant tendered performance of the contract; both apparently abandoned the contract. Appellant did not plow the land as he had agreed to. He only built three tenant houses, where the contract called for at least five. He did not secure the $40,000 loan on the land that he had contracted to secure. He never tendered performance of this part of the contract, and the evidence is clear that he was unable to do so. On the other hand, appellee did not tender performance. She did not furnish an abstract showing good title in her. There was a lien against the land securing an indebtedness of $30,000. She never tendered appellant a release of this lien. The jury found that appellant did not agree to waive his right to a tender of this release. The jury did, however, find that appellant had, by his conduct, led appellee to believe he would waive this tender, and but for such conduct a release would have been secured and tendered. This finding of the jury is neither supported by pleading nor proof.

We thus come to the conclusion that appellant is not in a position to demand payment for the improvements which he placed upon appellee's land, as he breached his contract. Appellee is not in a position to demand the earnest money posted by appellant, as she did not tender performance. The attorney's opinion on the abstract furnished by appellee pointed out several objections, to wit: The $30,000 lien; the abstract was not brought down to date; and the taxes for the year 1925 were not shown to have been paid. These objections were never cured. The $2,500 earnest money belonged to appellant, and, until appellee shows herself to be in a position to claim it as a forfeiture, it is not her money. Pfeiffer v. Wilke (Tex. Civ. App.) 107 S. W. 361; 13 C. J. p. 764, § 956; W. E. Stewart Land Company v. Terrell (Tex. Civ. App.) 266 S. W. 604; Wright v. Bott (Tex. Civ. App.) 163 S. W. 360.

Paragraph 8 of the contract provides, among other things, that, if appellant breached the contract, all material, work, and improvements placed upon the land should become the property of appellee. Paragraph 9 provides, among other things, in substance, that, if appellee should breach the contract, the earnest money should be returned to appellant. We conclude that these plain provisions of the contract should have been carried out as written. Appellee was not entitled to the $2,500, and should not have taken it without the consent of appellant. She is responsible to him for this sum, with interest at the rate of 6 per cent. per annum from April 9, 1927.

Appellee has filed three cross-assignments of error. We find them to be without merit, and they will be overruled.

For the reasons above stated, the judgment of the trial court will be reversed and judgment here rendered for appellant against appellee in the sum of $2,500, together with interest at the rate of 6 per cent. per annum from April 9, 1927, until paid.

Reversed and rendered.