The judgment is reversed and the cause remanded.

**ZUCHT et al. v. STEWART TITLE GUARANTY CO. et al.**

No. 11723.

Court of Civil Appeals of Texas. San Antonio.

Nov. 26, 1947.

Rehearing Denied Jan. 7, 1948.

Guy Bonham, of San Antonio, for appellants.

M. Riley Wyatt and Morriss, Morriss & Boatwright, all of San Antonio, for appellees.

MURRAY, Justice.

This is an interpleader suit by Stewart Title Guaranty Company, in which Adolph Zucht, J. E. Willerson and R. L. Ham were brought into court for the purpose of determining the ownership of $500 placed with the title company by J. E. Willerson, as earnest money, in connection with an alleged promise to purchase a house and lot in San Antonio, known as 1928 Winona Street, and described as Lots 13 and 14, Block 16, New City Block 8449, Kingston Heights Addition to the City of San Antonio, Texas. The $500 was paid into the registry of the court by the interpleader.

Adolph Zucht and R. L. Ham, on the one hand, and J. E. Willerson, on the other, claimed to be entitled to the $500. The trial was to a jury and resulted in judgment for J. E. Willerson for the sum of $500 less an attorney's fee of $25 allowed Stewart Title Guaranty Company, which fee was agreed to by all parties.

From this judgment Adolph Zucht and R. L. Ham have prosecuted this appeal.

The $500 was money deposited by J. E. Willerson with the title company, and he was entitled to judgment therefor, unless appellants could show that in some way they had become entitled to it.

The property at 1928 Winona Street belonged to Adolph Zucht, it was listed with R. L. Ham for sale, and was shown to J. E. Willerson and his wife, Mrs. Annie B. Willerson, by Mrs. Eva Rosow, who was a real estate agent in the employ of R. L. Ham. The Willersons decided to purchase the property and signed what is denominated an "Earnest Receipt" in connection with which they deposited the $500 with the title company. . . .

The cause was submitted to the jury upon the following four special issues, to which the jury made answers as indicated.

"1. Do you find from a preponderance of the evidence that the statement made by Mrs. Rosow prior to the execution of the contract of December 16, 1944, to the effect that the purchase of the property at 1928 Winona Street, San Antonio, Texas, for $10,500.00 was a good buy, was false?

"* * * We, the jury, answer: Yes.

"2. Do you find from a preponderance of the evidence that the statement made by Mrs. Rosow inquired about in question No. 1, above, induced Dr. J. E. Willerson to sign such contract?

"* * * We, the jury, answer: Yes.

"3. Do you find from a preponderance of the evidence that the statement by Mrs. Rosow prior to the signing of the contract of December 16, 1944, to the effect that the property at 1928 Winona Street, San An-

tonio, Texas, was worth $10,500.00 at such time, was false?

"* * * We, the jury, answer: No.

"4. Do you find from a preponderance of the evidence that Dr. J. E. Willerson was induced to sign the contract of December 16, 1944, by reason of Mrs. Rosow's statement to the effect that the property at 1928 Winona Street, San Antonio, Texas, was worth $10,500.00 in December, 1944?

"* * * We, the jury, answer: Yes."

It will be noted that the jury found that Mrs. Rosow's statement that the purchase of the property at 1928 Winona Street for $10,500 was a good buy was false, but that her statement that the property was worth $10,500 was not false.

■ Appellants first contend that the statement by Mrs. Rosow, to the effect that the property in question was a "good buy" at $10,500, was not a false representation as to a material fact, but a mere expression of an opinion, and is nothing more than "puffing" or "sales talk." Appellee seems to concede that as a general rule this is true but contends that here the parties were not dealing at arm's length, and that therefore an exception to the general rule exists. We overrule this contention.

■ J. E. Willerson was a medical doctor employed at the San Antonio State Hospital located in San Antonio. He and his wife, Mrs. Annie B. Willerson, were living in an apartment at the institution and were very anxious to obtain a home. They saw in the newspapers an advertisement of the property in question and called Mrs. Rosow. An appointment was made to inspect the property, and after an inspection of the property Dr. Willerson informed Mrs. Rosow that he did not like the property and would not buy it. On their way returning to their apartment Mrs. Willerson informed her husband that she liked the property and would like to buy it. After some discussion Dr. Willerson told his wife if she wanted to buy the property to telephone Mrs. Rosow, which she did. Mrs. Rosow came to their apartment that night and while there received a check for $500.-00 as earnest money. Before putting up

the $500 Mrs. Willerson told Mrs. Rosow that she felt a great deal of responsibility in the matter as she was the one that was insisting on making the purchase and wanted to know of Mrs. Rosow if she was making a mistake. Mrs. Rosow assured her that she was not, and that the property was a good buy at the price it was being offered. Mrs. Rosow also told the Willersons that if they purchased the property and decided they didn't like it, if they would let her advertise it and give her two weeks she could resell it for $12,500. Mrs. Rosow left the apartment with the check for $500 and soon thereafter the so-called "Earnest Receipt" was executed. We find nothing in the record to indicate that the parties were not dealing at arm's length. It is true that Willerson was a medical doctor and Mrs. Rosow was a real estate woman with seven years' experience. It is also true that the Willersons were not familiar with real estate values in San Antonio and Mrs. Rosow did know such values. When the Willersons called Mrs. Rosow over the telephone they began to ask her about the house and she suggested it would be best for them to inspect the place, which they later did. There is nothing to show that Mrs. Rosow concealed anything from the Willersons or attempted to prevent them from making all the investigation they might care to make. It occurs to us that the parties were dealing at arm's length and that there was no such fiduciary or confidential relation existing between them as to render it improper for the saleslady to "puff" the property she was offering for sale. The parties were apparent strangers before they met for the purpose of inspecting the property. The Willersons understood that Mrs. Rosow was a real estate agent trying to sell real estate and should have regarded anything she had to say about the value of the property with this in mind. 20 Tex.Jur. p. 71, §§ 41 and 42; Long v. Martin, Tex.Civ.App., 234 S.W. 91; Lloyd v. Junkin, Tex.Civ.App., 75 S.W. 2d 712. To hold that in this case the parties were not on an equal footing and dealing at arm's length, would be to hold that in every case where a person who is unfamiliar with the real estate business, deals with an experienced real estate agent, he

is not required to rely upon his own judgment but may rely with absolute credence on any and all "sales talk" which such agent may see fit to give him as to the future value of real estate.

Furthermore, there is nothing to show that Mrs. Rosow's statements were not made in good faith. The jury actually found that her statement that the property was worth $10,500 was not false. The property actually sold for that price shortly after the Willersons declined to go through with the deal and within six months the purchaser actually sold the property for a profit of $800.

Appellees contend that the contract to purchase the property at 1928 Winona Street was based upon a condition precedent, to-wit: the ability of appellees to borrow $5,500 on the property from the Guaranty Federal Savings and Loan Association, or some other lending institution, at the interest rate of 5%. The so-called "Earnest Receipt" does contain language that such a loan was contemplated, but there is nothing in the receipt to indicate that such matter was made a condition precedent to the effectiveness of the contract.

Appellee complains because Zucht did not tender to him a deed, as provided for in the "Earnest Receipt." Before the time for closing the deal appellee notified appellants that he would not go through with the deal and that he was refusing to comply with the obligations placed upon him by the "Earnest Receipt." After appellee had repudiated his part of the obligation he cannot complain because Zucht did not do the useless thing of tendering him a deed.

Appellee next contends that the provision in the contract that: "Upon failure of buyer to comply herewith, seller may, at his option, either enforce specific performance, or forfeit this earnest money as liquidated damages (at the option of agent, one-half to go to seller and one-half to agent)," should be construed as a provision for a penalty and not as a provision for liquidated damages in the sum of $500.

We overrule this contention. The determination of whether a sum named in a contract to be paid by a party in default on its breach is to be considered as "liquidated damages," or merely as a "penalty" is a difficult and perplexing question. There is no fixed or general rule applicable to all contracts, each case being governed in a great measure by its own peculiarities and particular facts and circumstances. 25 C.J. S., Damages § 102.

As a general rule, the question is one of law for the court and is to be determined as of the time when the contract was executed. 25 C.J.S. Damages, § 102; Ferguson v. Ferguson, Tex.Civ.App., 110 S.W.2d 1016; Irvin v. Lamberth, Tex.Civ. App., 70 S.W.2d 495. It is one of the most subtle questions of the law and has led to innumerable adjudications. Board of Education of City of Sapulpa v. Broadwell, 117 Okl. 1, 245 P. 60.

In determining whether a provision of this nature is for a "penalty" or for "liquidated damages" the intention of the parties should govern. Ferguson v. Ferguson, Tex.Civ.App., 110 S.W.2d 1016; Southern Plow Co. v. Dunlap Hardware Co., Tex.Civ.App., 236 S.W. 765; Board of Education of City of Sapulpa v. Broadwell, 117 Okl. 1, 245 P. 60; 25 C.J.S. Damages, § 102.

Where, in a contract for the purchase and sale of real estate, a reasonable sum of money is placed in escrow and the contract clearly and in unambiguous terms provides that such sum is to be forfeited to the seller as liquidated damages in the event buyer breaches his agreement to purchase, and where the contract goes further, as it does in this case, and directs that the seller may sue for specific performance or forfeit the earnest money, one-half to be paid to the seller and one-half to the real estate agent, such provision is to be construed by the court as a provision for "liquidated damages" and not one merely for a "penalty." Eakin v. Scott, 70 Tex. 442, 7 S.W. 777; Reinhardt v. Borders, Tex.Civ. App., 184 S.W. 791; Pippin Bros. v. Thompson, Tex.Civ.App., 292 S.W. 618; Collier v. Betterton, 87 Tex. 440, 29 S.W. 467; Irvin v. Lambert, Tex.Civ.App., 70 S.W.2d 495; Langever v. R. G. Smith & Co., Tex.Com.App., 278 S.W. 178; Ferguson v. Ferguson, Tex.Civ.App., 110 S.W.2d

1016; Hyde v. Claude Neon Federal Co., Tex.Civ.App., 157 S.W.2d 952.

■ Where the provision in the contract for the forfeiture is clearly a provision for "liquidated damages" in the event the buyer should make default and where no other conclusion can be reached, when the contract is construed from its four corners, then it becomes the duty of the court to construe such contract as one providing for "liquidated damages." Norman v. Vickery, 60 Tex.Civ.App. 449, 128 S.W. 452; Pippin Bros. v. Thompson, Tex.Civ. App., 292 S.W. 618; Hyde v. Claude Neon Federal Co., Tex.Civ.App., 157 S.W.2d 952.

■ The above rule should be limited to the extent, however, that the buyer should be permitted to show by parol evidence that such a strict construction of the contract would work absurdity or oppression, in which event the court will inquire into the actual injuries sustained and do justice between the parties. Farrar v. Beeman, 63 Tex. 175.

■ In the instant case the seller did offer evidence bearing upon the question of the amount of actual damages sustained. It was shown that after Dr. Willerson refused to go through with the deal the property was sold to another party for the same price, which was $10,500. There is no evidence as to the expenses incurred in this resale, such as time of agent, advertising, etc. The fact that the property at a later date sold for the same price, or even at a profit, is no evidence that a provision for liquidated damages in the sum of $500 for the breach of a contract to purchase a house and lot for the agreed sum of $10,500, is an unreasonable stipulation as to contemplated damages. Nelson v. Richardson, Tex.Civ.App., 299 S.W. 304; Atwood v. Fagan, 63 Tex.Civ.App. 659, 134 S.W. 765; Garrard v. Cantrell, Tex.Civ.App., 232 S.W. 911.

■ It is true that the evidence shows that the question of damages was never discussed or anticipated before the signing of the "Earnest Receipt," but where the language of the contract is clear and unambiguous and plainly contains a provision for the forfeiture of the earnest money as "liquidated damages" and that it is to be paid at the option of the seller one-half to seller and one-half to the real estate agent, and that such liquidated damages are not unreasonable, as in this case less than 5% of the agreed purchase price, it will be conclusively presumed that the parties were familiar with the terms of the contract they were signing and the discussion leading up to its execution would become unimportant. Reinhardt v. Borders, Tex.Civ.App., 184 S.W. 791; Sparenberg v. Collins, Tex.Civ. App., 63 S.W.2d 241; Magruder v. Poulton, Tex.Com.App., 257 S.W. 533; Lipscomb v. Fuqua, 103 Tex. 585, 131 S.W. 1061; Irvin v. Lambert, Tex.Civ.App., 70 S.W.2d 495; Hyde v. Claude Neon Federal Co., Tex.Civ.App., 157 S.W.2d 952.

■ Especially is this true where the contract relates to matters where the damages in the event of a breach are uncertain and not easy of accurate ascertainment. It has been held, time and again, that a provision for liquidated damages in a contract for the sale and purchase of real estate is proper as being a transaction in which the damages for the breach thereof are uncertain and not easily estimated with accuracy. Magruder v. Poulton, Tex.Com. App., 257 S.W. 533, reversing Tex.Civ. App., 243 S.W. 512; Lipscomb v. Fuqua, 103 Tex. 585, 131 S.W. 1061, affirming, 55 Tex.Civ.App., 535, 121 S.W. 193; Reinhardt v. Borders, Tex.Civ.App., 184 S.W. 791; Atwood v. Fagan, 63 Tex.Civ.App. 659, 134 S.W. 765; Collier v. Betterton, 87 Tex. 440, 29 S.W. 467; Irvin v. Lambert, Tex.Civ.App., 70 S.W.2d 495; Pippin Bros. v. Thompson, Tex.Civ.App., 292 S.W. 618; Matthews v. Caldwell, Tex.Com.App., 258 S.W. 810, reversing Tex.Civ.App., 241 S. W. 798; Langever v. R. G. Smith & Co., Tex.Com.App., 278 S.W. 178, reversing R. G. Smith & Co. v. Langever, Tex.Civ.App., 261 S.W. 450.

■ Under all the circumstances above pointed out and in view of the unambiguous language contained in the "Earnest Receipt," we construe the same as a stipulation for liquidated damages. Accordingly, the judgment of the trial court will be reversed insofar as it permits any recovery by cross-plaintiff J. E. Willerson and such

420

judgment will be amended so as to permit a recovery by cross-plaintiffs Adolph Zucht and R. L. Ham of the $500 deposited with the court below, after the fee allowed interpleader, in the sum of $25, has been deducted, and also all costs of this Court and the court below.

Cross-plaintiffs Adolph Zucht and R. L. Ham shall also have judgment in the sum of $25 against J. E. Willerson (being the amount deducted for interpleader's fee), together with all costs.

The judgment as amended is affirmed.

HALL, C. J., dissenting.