

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00011-CV
_____

GREG JACOBSON, Appellant

V.

ARNAUD PRODEL AND LAURENCE MICHELLE PRODEL, Appellees

On Appeal from the County Court at Law No. 1
Travis County, Texas
Trial Court No. C-1-CV-18-004591

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

In April 2017, Greg Jacobson executed a contract to purchase (the Contract) Arnaud and Laurence Michelle Prodel's (Prodel) residence on Laura Lane in Austin[1] for $1,499,000.00. Jacobson deposited $30,000.00 in earnest money with Heritage Title Company in accordance with the liquidated-damage provision of the Contract. After amending the Contract to extend the closing date to February 28, 2018, Jacobson deposited an additional $30,000.00 in earnest money with Heritage. On February 15, 2018, Jacobson notified Prodel that he was terminating the contract.

The parties filed competing declaratory judgment actions, each claiming entitlement to the earnest money Jacobson deposited with Heritage. Following a bench trial, the trial court entered judgment[2] awarding Prodel the $60,000.00 in earnest money, plus attorney fees. On appeal,

---

[1]Originally appealed to the Third Court of Appeals in Austin, this case was transferred to this Court by the Texas Supreme Court pursuant to Section 73.001 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Third Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]The trial court issued findings of fact and conclusions of law as follows:

### FINDINGS OF FACT

1. On or about April 12, 2017, Plaintiffs and Defendant entered into a One to Four Family Residential Contract (hereinafter "the Contract") in which Defendant agreed to purchase 109 Laura Lane, Austin, Texas 78746 (hereinafter "the Property") from Plaintiffs for the purchase price of $1,499,000.00 and with a closing date on or before August 11, 2017.

2. The Contract did not have a financing contingency addendum nor an option period.

3. In conjunction with the Contract, Defendant willingly deposited $30,000.00 in earnest money with Heritage Title Company.

4. On or about September 22, 2017, Plaintiffs and Defendant entered into an Amendment to the Contract that extended the closing date to on or before October 31, 2017. This Amendment also permitted Defendant to extend the closing date to February 28, 2018, if

2

for some reason Defendant failed to close by October 31, 2017, by depositing an additional $30,000.00 in earnest money with Heritage Title Company by October 26, 2017.

5.      Defendant willingly deposited an additional $30,000.00 in earnest money with Heritage Title Company, bringing the total earnest money deposited pursuant to the terms of the Contract to $60,000.00.

6.      Under the Contract Amendment, if Defendant failed to close on the purchase of the Property, the $60,000.00 in earnest money would be paid to Plaintiffs.

7.      A dispute arose between Plaintiffs and Defendant concerning the square footage of the home located on the Property. Before executing the Contract Defendant had received architectural plans that cited 3,713 square feet and had also viewed a listing for the property on the Multiple Listing Service that cited 3,764 square feet. The listing included a disclaimer that the information therein was "deemed reliable but not guaranteed and should be verified." In 2018, Defendant determined that the actual area was 3,674 square feet.

8.      On February 15, 2018, Defendant sent notice through his attorney that he was terminating the Contract.

9.      Defendant did not close or make an attempt to purchase the Property.

10.      Both Plaintiffs and Defendant made demand on the other for payment of the earnest money deposited with Heritage Title Company and for attorneys' fees.

11.      Plaintiffs incurred $26,080.01 in reasonable and necessary attorney's fees to enforce the Contract against Defendant and to defend Defendant's claims and affirmative defenses.

12.      Plaintiffs will incur at least $5,000.00 in attorney's fees if Defendant appeals the Judgment to the Court of Appeals. If a petition for review is made to the Supreme Court of Texas, Plaintiffs will incur at least an additional $5,000.00. If the Supreme Court of Texas grants a writ of error, Plaintiffs will incur at least $5,000.00 to prepare and resist the appeal before the Supreme Court of Texas.

## CONCLUSIONS OF LAW

1.      Defendant's receipt of inaccurate square footage information did not constitute any misrepresentation by Plaintiffs and was not a material term of the contract between Plaintiffs and Defendant.

2.      Defendant's termination of the Contract without closing on the Property within the time allotted and failure to pay the "Sales Price" (as defined in the Contract) on or before the closing date constituted a default under the Contract and Amendment, entitling Plaintiffs to the $60,000.00 in earnest money.

3.      At the time the Contract and the Amendment were executed, the harm that would be caused by Defendant's breach was difficult to estimate, because damages for breach of a contract to buy or sell real estate are uncertain and not easily estimated with accuracy.

3

Jacobson contends that the liquidated-damage provision was an unenforceable penalty and that he is entitled to stipulated attorney fees. Because we find that the Contract's liquidated-damage provision was not a penalty, we affirm the judgment of the trial court.

The liquidated damage or "default" provision in the contract before us provides:

If buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from the contract.

Paragraph 9 of the contract amendment provides:

The additional $30,000 earnest money deposited on 10/30/17 was due to an extension given for the amount due on 10/26/17. The total earnest money being held in escrow at Heritage Title is $60,000.

---

4. At the time the Contract and Amendment were executed, Plaintiffs and Defendant intended the release of earnest money to Plaintiffs, in the event of the Defendant's default, not as a penalty, but as a forecast of just compensation of damages that Plaintiffs would suffer upon Defendant's default.

5. At the time of the Contract, $30,000.00 was a reasonable forecast of just compensation for Defendant's failure to perform.

6. At the time of the Amendment, an additional $30,000.00 was a reasonable forecast of just compensation for Defendant's failure to perform.

7. Pursuant to Texas Civil Practice and Remedies Code Chapter 38 and the prevailing party provision of the Contract, Plaintiffs are entitled to court costs and the reasonable and necessary attorney's fees calculated above.

8. Plaintiffs are entitled to post judgment interest at the rate of 5.25% from May 17, 2018, through the date of Judgment, in the amount of $1,613.84.

9. Plaintiffs are entitled to post judgment interest at the rate of 5.25%, compounded annually, from the date of Judgment until paid.

"The term 'liquidated damages' ordinarily refers to an acceptable measure of damages that parties stipulate in advance will be assessed in the event of a contract breach." *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427 (2005). However, because "[t]he basic principle underlying contract damages is compensation for losses sustained and no more[,] . . . we will not enforce punitive contractual damages provisions." *FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 69 (Tex. 2014). Consequently, when a liquidated-damages provision is a penalty for failure to comply with a contract, it is unenforceable. *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991). The party seeking to invalidate the contract bears the burden of proving the liquidated damages are a penalty. *Domizio v. Progressive Cty. Mut. Ins. Co.*, 54 S.W.3d 867, 874 (Tex. App.—Austin 2001, pet. denied). "While the question may require a court to resolve certain factual issues first, ultimately the enforceability of a liquidated-damages provision presents a question of law for the court to decide." *FPL Energy, LLC*, 426 S.W.3d at 70.

To enforce a liquidated-damages provision, we must find "(1) that the harm caused by the breach is incapable or difficult of estimation and (2) that the amount of liquidated damages called for is a reasonable forecast of just compensation." *Phillips*, 820 S.W.2d at 788; *see S. Union Co. v. CSG Sys., Inc.*, No. 03-04-00172-CV, 2005 WL 171349, at *4 (Tex. App.—Austin Jan. 27, 2005, no pet.) (mem. op.). "We evaluate both prongs of this test from the perspective of the parties at the time of the contracting." *FPL Energy, LLC*, 426 S.W.3d at 69–70.

We first consider prong one, the difficulty of estimating in advance the damages that may be sustained by Prodel if Jacobson were not to close on the sale. The Contract was executed on April 12, 2017, and the closing of the sale was originally scheduled for August 11, 2017. Jacobson

5

deposited $30,000.00 to secure that closing date. When the closing did not take place on the initially scheduled date, the parties executed a contract amendment changing the closing date to October 31, 2017. The amendment also provided that, if the closing did not take place by October 31, 2017, Jacobson would deposit an additional $30,000.00 earnest money with Heritage by October 26, 2017, at which time the closing date of the sale would be February 28, 2018. The closing did not take place by October 31, 2017, and Jacobson deposited the additional $30,000.00 earnest money with Heritage, with a new closing date of February 28, 2018.

This timeline of events indicates that ten months elapsed from the time the Contract was executed until the final closing date for the sale. Neither party presented evidence regarding fluctuations in the real estate market during those ten months. Yet, Texas courts have recognized the fact that "one year can make an enormous difference in the value of real estate." *Barry v. Jackson*, 309 S.W.3d 135, 141 (Tex. App.—Austin 2010, no pet.); *Chan v. Montebello Dev. Co.*, No. 14-06-00936-CV, 2008 WL 2986379, at *3–4, (Tex. App.—Houston [14th Dist.] July 31, 2008, pet. denied) (mem. op.) (quoting *Naylor v. Siegler*, 613 S.W.2d 546, 547 (Tex. App.—Fort Worth 1981, no writ)) ("'Real property has a fluctuating value' and '[t]here is no way to ascertain at any given time what the value of a particular tract of real property might be in the future.'"); *Naylor v. Siegler*, 613 S.W.2d 546, 547 (Tex. App.—Fort Worth 1981, no writ) ("It is impossible to forecast the damages which might flow to the seller of real property in the event of breach of the contract by the purchasers."); *Zucht v. Stewart Title Guar. Co.*, 207 S.W.2d 414, 419 (Tex. App.—San Antonio 1947, writ dism'd) ("It has been held, time and again, that a provision for liquidated damages in a contract for the sale and purchase of real estate is proper as being a

6

transaction in which the damages for the breach thereof are uncertain and not easily estimated with accuracy.").

Jacobson did not present evidence that, at the time of the Contract's execution, damages resulting from the failure to close the sale would be anything other than indeterminable or otherwise difficult to estimate. *See CSG Sys., Inc.*, 2005 WL 171349, at *5 (because it was apparent from face of contract that damages would be difficult to estimate, agreed liquidated-damages provision was necessary). On this record, we find that Jacobson failed to carry his burden to show that the harm flowing from the failure to close the sale was not difficult to estimate.

We next examine the second prong, the reasonableness of the damage forecast. Jacobson contends that $60,000.00 was an unreasonable forecast because it was disproportionate to Prodel's actual damages of $5,000.00. This assertion is based on Prodel's testimony that he signed a contract for the sale of the Laura Lane property within a week of February 28, 2018. On April 6, 2018, Prodel closed on the resale of the property for the same price Jacobson had agreed to pay, less $5,000.00 for miscellaneous repairs.

"We view the reasonableness of the forecast from the time of the contracting." *FPL Energy, LLC*, 426 S.W.3d at 70 (citing RESTATEMENT (SECOND) OF CONTRACTS § 356 cmt. b (1981)) (identifying time of making contract as moment to measure reasonableness of anticipated loss); *see Belfiore Developers, LLP v. Sampieri*, No. 01-17-00847-CV, 2018 WL 1161558, at *5 (Tex. App.—Houston [1st Dist.] Mar. 6, 2018, no pet.) (mem. op.) (both prongs of test evaluated "from the perspective of the parties at the time of the contracting") (quoting *FPL Energy, LLC*, 426 S.W.3d at 69–70). "[U]nder this test, a liquidated damages provision may be unreasonable

7

'because the actual damages incurred were much less than the amount contracted for.'" *FPL Energy, LLC*, 426 S.W.3d at 70 (quoting *Phillips*, 820 S.W.2d at 788).

Nevertheless, "*Phillips* did not create a broad power to retroactively invalidate liquidated damages provisions that appear reasonable as written." *Id*. at 72. "But when there is an unbridgeable discrepancy between liquidated-damages provisions as written and the unfortunate reality in application, we cannot enforce such provisions." *Id*. Here, we do not find such an "unbridgeable discrepancy" between the liquidated-damages provision in the Contract and the amendment as written and the "reality in application."[3]

The contract price of the Laura Lane property was $1,499,000.00. Sixty-thousand dollars in liquidated damages represents only four percent of that purchase price. *See Chan*, 2008 WL 2986379, at *5 (finding negotiated amount of earnest money which was ten percent of total purchase price to be reasonable amount of liquidated damages in real estate transaction); *Ashton v. Bennett*, 503 S.W.2d 392, 394–95 (Tex. App.—Waco 1974, writ ref'd n.r.e.) (upholding liquidated-damages provision entitling seller to approximately sixteen percent of purchase price); *Thanksgiving Tower Partners v. Anros Thanksgiving Partners*, 64 F.3d 227, 232 (5th Cir.1995) ($5 million was reasonable liquidated damage amount despite internal memorandum stating anticipated damages were only $1.4 million). This relatively small percentage of the overall purchase price comprising bargained-for liquidated damages does not appear to be an unreasonable

---

[3]In *FPL Energy, LLC*, the Texas Supreme Court declared the liquidated-damages provision relating to renewable energy credits unenforceable as a penalty. *FPL Energy, LLC*, 426 S.W.3d at 60. Actual damages were $6,160,000.00, whereas the court of appeals had "assessed damages" at $29 million. *Id*. at 72.

forecast of loss that might have been sustained by Prodel if the Contract for sale were not to close after ten months.

The fact that the forecast was inaccurate is not outcome determinative. Because we must measure the forecast at the time of the agreement, "evidence that a property sold at a later date for the same price, or even at a profit," does not prove that the provision is an "unreasonable stipulation as to contemplated damages." *Chan*, 2008 WL 2986379, at *4 (citing *Zucht*, 207 S.W.2d at 419). Here, the specified amount of liquidated damages represents a relatively small percentage of the sale price and appears reasonable as written. *FPL Energy, LLC*, 426 S.W.3d at 72.

Finally, it is apparent from the course of events that the parties mutually bargained for the provision. "When a provision is mutually bargained for by equally competent parties, we give deference to its enforcement." *CSG Sys., Inc.*, 2005 WL 171349, at *5 (citing *Shel-al Corp. v. Am. Nat'l Ins. Co.*, 492 F.2d 87, 94 (5th Cir.1974)). Here, the parties agreed to the liquidated-damages provision and later agreed to extend the closing date in consideration of Jacobson's deposit of an additional $30,000.00 in earnest money. Jacobson's testimony established that he knew he risked losing the earnest money if he did not close on the sale. He knew of that possibility when he asked to extend the closing date to February 2018, but nevertheless deposited an additional $30,000.00 in earnest money in consideration for extending the closing date. Because the parties mutually bargained for the liquidated-damages provision, we give deference to its enforcement.

9

We affirm the trial court's judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:    July 29, 2019
Date Decided:      August 8, 2019