64 F.3d 227
 THANKSGIVING TOWER PARTNERS, et al., Plaintiffs-Counter,
Defendants-Appellees,
v.
ANROS THANKSGIVING PARTNERS, a California Limited
Partnership and Anthony T.C. Gaw,
Defendants-Counter Plaintiffs,
Third-Party Plaintiffs-Appellants,
v.
BEAR STEARNS REAL ESTATE GROUP, INC., Third Party Defendant-Appellee.
 No. 94-10863.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 20, 1995.
 
 Harriet E. Miers, Margaret Donahue Hall, Locke, Purnell Rain & Harrell, Dallas, TX, for appellants.
 Lewis T. LeClair, Kevin Charles Nash, Johnson & Gibbs, Dallas, TX, Alan B. Rich, Friedman & Associates, Dallas, TX, for appellees.
 Appeal from the United States District Court for the Northern District of Texas.
 Before WISDOM, DUHE and BARKSDALE, Circuit Judges.
 WISDOM, Circuit Judge.
 
 
 1
 The defendant/appellant, Anros Thanksgiving Partners (Anros), seeks review of the district court's grant of summary judgment to the plaintiffs/appellees, Thanksgiving Tower Partners (TTP), TMC, and Bear Stearns Companies, Inc. (BSC). Since we agree that the plaintiffs were entitled to judgment as a matter of law, we AFFIRM.
 
 I.
 
 2
 This case arises out of the purchase of an 80.5 percent condominium interest in the Thanksgiving Tower located in Dallas, Texas. In 1988, the Tower was owned by Hunt Petroleum Corporation (Hunt), Placid Building and Service Company (Placid), and Rosewood Properties, Inc. (Rosewood), as co-tenants. BSC entered into a contract to purchase the Thanksgiving Tower for a total of $165 million on April 21, 1988. In May 1988, BSC and TMC formed the Thanksgiving Tower Partners (TTP) and entered a partnership agreement which required each to provide $9 million towards the purchase of the property.[1] Placid, however, filed bankruptcy proceedings before the transaction was completed. In order to fulfill an agreement Placid reached with his creditors, Placid needed to receive $50 million in cash at the time of the sale.[2] Thus, BSC needed an additional investor.
 
 
 3
 Anros, managed by its general partner Anthony Gaw, agreed to fund the sale and entered a buyout agreement with BSC. The agreement provided that, after the bankruptcy court approved the sale, BSC would give Anros a good faith estimate of the expected closing date. Anros was then obligated to fund its share of the sale, $40 million, at least five days before the estimated closing date. Anros's obligation was secured by a $5 million letter of credit to be created by Anros in favor of BSC by June 20, 1988, which Anros agreed to forfeit as liquidated damages if Anros failed to fund the sale.[3] Also, Anros, BSC, and TMC entered a second partnership agreement which provided that all three would be partners in TTP once Anros funded the sale.
 
 
 4
 The $5 million letter of credit was established by Anros after the deadline, in August of 1988. During this period, Anros also requested extensions of the projected closing date. On August 17, 1988, as required by the contract, BSC sent Anros a notice of the expected closing date, September 20, 1988. As a result, Anros's funding deadline for its $40 million share was September 15, 1988.
 
 
 5
 On September 14, 1988, Anros requested another extension of the closing date from September 20, 1988 to September 23, 1988, extending Anros's funding deadline to September 19, 1988. BSC suggested that Anros negotiate the extension directly with the sellers. The sellers agreed to an extension if a $1 million letter of credit was established in their favor by September 19, 1988. This agreement was reduced to writing and the agreement was signed by BSC and the sellers.
 
 
 6
 On September 15, 1988, BSC informed Anros that before it would exercise its option and extend the closing date, Anros would have to provide the $1 million letter of credit in favor of the sellers by that same day and not, as required by the sellers, on September 19, 1988. Anros failed to establish the letter of credit and on September 16, 1988, BSC drew on the $5 million letter of credit established by Anros to secure its obligations under the buyout agreement. Anros considered this a breach of its contract with BSC and failed to fund the sale. BSC completed the purchase without Anros.
 
 
 7
 BSC filed this case against Anros seeking damages for breach of contract and a declaratory judgment that it did not act improperly in drawing on the letter of credit. Anros filed counterclaims and a third party complaint against the Bear Stearns Real Estate Group, a subsidiary of BSC, alleging that BSC had breached its contractual and fiduciary duties of good faith, as well as causes of action for fraud, negligent representation, and promissory estoppel. Both sides filed motions for summary judgment. The district court granted BSC's motion because it concluded that BSC breached no contractual or fiduciary duty owed Anros, that the liquidated damages clause was enforceable, and that Anros's causes of action failed for lack of detrimental reliance.
 
 
 8
 On appeal, Anros raises several issues.[4] First, Anros continues to argue that BSC breached both contractual and fiduciary duties owed Anros when it refused to grant the extension unless the $1 million letter of credit was established by September 15, 1988 and subsequently drew on the $5 million letter of credit. Also, Anros alleges that the liquidated damages clause in the buyout agreement is unenforceable as a penalty, or, alternatively, is unconscionable. Finally, the defendant argues that the district court erred when it granted BSC summary judgment on the defendant's claims of fraud, negligent misrepresentation, and promissory estoppel. We address each argument in turn.
 
 II.
 A. Standard of review
 
 9
 We review de novo the district court's decision to grant summary judgment.[5] We view all facts in the light most favorable to the non-movant.[6] Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[7]
 
 B. Alleged breach of contract by BSC
 
 10
 The defendant argues that the plaintiffs wrongfully drew on the letter of credit. Specifically, Anros alleges that BSC should have given it the full benefit of the extension granted by the sellers and not required the $1 million letter of credit to be established by September 15, 1988. Anros alleges that BSC breached its contractual obligation to give Anros notice of its good faith estimate of the closing date. In other words, Anros argues that BSC was not acting in good faith, as required by the contract, when it continued to maintain that the closing date was September 20, 1988 and, therefore, the funding deadline was September 15, 1988.
 
 
 11
 The plaintiffs respond by pointing out that until the $1 million letter of credit was established in favor of the sellers, the closing date was still September 20, 1988. Further, BSC argues that the extension granted by the sellers was at its option and Anros was not a party to either the acquisition contract or the option for an extension. The plaintiffs also point out that had it given Anros until September 19, 1988 and Anros failed to secure the extension, BSC would have had until September 20, 1988 to fund Anros's $40 million share of the sale. BSC contends that its contract with Anros did not obligate it to allow Anros the same amount of time allowed BSC by the sellers to establish the $1 million letter of credit in order to trigger the extension.
 
 
 12
 We agree. First, BSC did not breach its contractual duty to estimate the closing date in good faith because, until the option for extension was exercised, the official closing date was September 20, 1988. Further, Anros is unable to cite any language in the contract between it and BSC which required BSC to impose on Anros the same deadline imposed on it by the sellers. Anros argues in its brief that there was "no plausible reason why" the plaintiffs should not have allowed Anros all of the extra time allowed by the sellers.[8] Whether that is true or not, it is not relevant to the issue of whether BSC breached its contract with Anros. We can find no basis to support Anros's allegation that BSC breached their contract. Thus, the district court did not err when it granted summary judgment for the plaintiffs on this issue.[9]
 
 C. Alleged breach of fiduciary duty by BSC
 
 13
 As an alternative basis for concluding that BSC wrongfully failed to grant Anros the full benefit of the extension negotiated with the sellers, Anros suggests that BSC breached a fiduciary duty owed to Anros. In response, BSC argues that there was no fiduciary relationship between it and Anros because the partnership agreement provided that Anros did not become a partner until it funded the sale. The defendant concedes that it was not an official partner in TTP but argues that BSC's course of conduct towards Gaw, Anros's managing partner, created a fiduciary relationship. That is, Anros argues that references to Anros as a partner by BSC employees, as well as the future legal partnership contemplated in the amended partnership agreement, created a fiduciary relationship between BSC and Anros.
 
 
 14
 Under Texas law, a fiduciary relationship can be created outside of a formal agreement "in the context of informal moral, social, domestic, or personal relationships in which one person trusts and relies on another".[10] A fiduciary relationship only "exists where a special confidence is placed in another ...".[11] This relationship, however, "is an extraordinary one" and will only be established in exceptional cases.[12]
 
 
 15
 Anros argues that when employees of BSC referred to Anros as BSC's partner that created a fiduciary relationship outside the partnership agreement. Further, Anros argues that it relied on these statements and BSC's course of conduct as confirmation that it could rely on BSC as a partner. Subjective trust of another, however, does not establish a fiduciary relationship.[13] Also, the fact that BSC employees referred to Anros as its partner "is not determinative of the legal relationship ...".[14] Anros cannot show that its relationship with BSC included the "special confidence" contemplated by Texas law. Rather, Anros and BSC "entered into an arms-length business transaction with sophisticated parties on both sides of the bargaining table".[15] Further, both parties contracted for a partnership after the purchase of the Thanksgiving Tower. Without evidence of a clear intent to create a relationship of confidence, the overriding intent of the parties to postpone partnership until the sale was completed, as evidenced by the written partnership agreement, cannot be modified. We affirm, therefore, the district court's decision that, as a matter of law, there was no fiduciary relationship between Anros and BSC.
 
 
 16
 D. Enforceability of the liquidated damages clause
 
 
 17
 The buyout agreement entered by Anros and BSC required Anros to establish a $5 million letter of credit in favor of BSC to secure its obligation to fund the sale. The contract provided further, in section 3, that if "[i]nvestor [Anros] fails to fund Investor's Closing Contribution as aforesaid, the sole and exclusive remedy of BSC, TMC and the partnership [TTP] shall be to retain the Investor L/C [letter of credit] proceeds ... as liquidated damages (and not as a penalty) ...".[16] BSC retained the $5 million it received from presentation of the letter of credit as damages. Below and on appeal, Anros argues that this liquidated damages provision is unenforceable as a penalty.
 
 
 18
 Under Texas law, a liquidated damages clause can only be enforced if it meets three requirements. First, the anticipated damages for a breach must be difficult or impossible to estimate.[17] Also, the amount of liquidated damages must be a reasonable forecast of the amount necessary to render just compensation.[18] In addition, "liquidated damages must not be disproportionate to actual damages," as measured at the time of the breach.[19] Thus, if the liquidated damages are disproportionate to the actual damages, the clause will not be enforced and recovery will be limited to the actual damages proven.[20] The party seeking to prevent enforcement bears the burden of proof on these issues.[21]
 
 
 19
 Anros points to an internal memorandum of BSC which estimated the damages BSC would suffer as a result of a breach by Anros at $1.4 million. Anros argues that $5 million could not be a reasonable estimate of just compensation in the light of the estimate contained in this memorandum. Further, Anros argues that BSC, due to its experience in this type of transaction, could have estimated its damages at the time the buyout agreement was signed.
 
 
 20
 We disagree. Texas courts have consistently held that damages for breach of a contract to buy or sell real estate are "uncertain and not easily estimated with accuracy".[22] And, although the contract at issue today is between two purchasers, the factors which make damages difficult to predict with regard to contracts between sellers and purchasers of real estate apply equally to this case. For example, as noted by the district court, the total amount of commissions and fees associated with the closing cannot be ascertained in advance. Also, the value of the property and, therefore, the profits to be gained from purchase varies with the market. In addition, in the internal memorandum cited by Anros, BSC contemplated additional damages as a result of possible damage to its business reputation if Anros failed to complete the sale. Thus, the district court did not err when it concluded that BSC's damages were difficult to determine in advance.
 
 
 21
 Neither did the district court err in holding, as a matter of law, that $5 million was a reasonable estimate of just compensation. BSC, according to its memo, faced approximately $1.4 million in damages if Anros failed to fund the sale. Also, in the event of a breach, BSC lost the $3.8 million Anros agreed to pay for a 10 percent interest in TMC. These estimates do not include the possible damage to BSC's reputation mentioned above. The $5 million in liquidated damages constitutes only 3 percent of the total sale price for Thanksgiving Tower, $165 million.[23] In the light of the anticipated damages discussed above and the large sums of money at issue in this transaction generally, Anros has failed to show that $5 million was not a reasonable estimate of just compensation.
 
 
 22
 Finally, Anros alleges that the $5 million in liquidated damages is disproportionate to the actual damages BSC suffered and, therefore, the liquidated damages clause is unenforceable. Anros cites the post-breach purchase of the Thanksgiving Tower by BSC and the resulting profit. As noted by BSC, however, the measure of actual damages is considered at the time of breach.[24] Anros bears the burden of showing that BSC's actual damages were disproportionate to the $5 million in liquidated damages. It has failed to do so. Therefore, we affirm the district court's decision that the liquidated damages clause is enforceable under Texas law.
 
 
 23
 E. Anros's causes of action for fraud, promissory estoppel, and negligent misrepresentation
 
 
 24
 Finally, Anros argues that the district court erred in granting BSC summary judgment on its causes of action for fraud, promissory estoppel, and negligent misrepresentation. Anros bases these claims on a conversation with BSC in which BSC allegedly promised Anros that it would not draw on the $5 million letter of credit. In exchange, Anros established the letter of credit.
 
 
 25
 The district court granted summary judgment for BSC on these claims because Anros had failed to show detrimental reliance in that the alleged exchange of promises was not supported by consideration. Anros concedes in its brief that detrimental reliance is a common element to all three causes of action,[25] but argues that consideration is not relevant to that inquiry. Under Texas law, however, "[d]etrimental reliance does not consist of the performance of pre-existing obligations that are properly compensated".[26] The buyout agreement provided that Anros was to establish a $5 million letter of credit to secure its obligation to fund the sale. This is an important term in a contract negotiated at arms-length among experienced contracting parties. Anros cannot now argue that by establishing the letter of credit, it fulfilled an obligation in addition to the contractual obligations to which it had already agreed.[27] We affirm the district court's grant of summary judgment to BSC on these claims.
 
 III.
 
 26
 We agree with the district court that BSC breached no contractual or fiduciary obligation owed Anros. Also, we find that the district court properly concluded that the liquidated damages clause was enforceable. Finally, we conclude that the district court properly granted BSC summary judgment on Anros's causes of action for fraud, promissory estoppel, and negligent misrepresentation. We, therefore, AFFIRM.
 
 
 
 [1]
 The plaintiffs will be referred to collectively in the remainder of the opinion as BSC
 
 
 [2]
 Originally, the acquisition contract provided for a total purchase price of $165 million, only $16.5 million of which was due at the closing. The remainder was to be guaranteed by promissory notes
 
 
 [3]
 Record, exhibit I at 3
 
 
 [4]
 The defendant raises three other issues in its brief. First, it argues that its damages were foreseeable and, therefore, recoverable. Since the defendant's claims were dismissed and we affirm that decision, the issue of the recoverability of the defendant's damages is moot. Second, Anros alleges that BSC's damages were not foreseeable and, therefore, not recoverable. BSC, however, received no damage award but was instead allowed to keep the $5 million in liquidated damages, after a review of its actual damages, and was awarded reasonable attorneys fees. Memorandum order of the district court at 12. Finally, the defendant argues that BSC should not have been granted summary judgment on its cause of action for fraud. We disagree and affirm the district court's grant of summary judgment on this claim
 
 
 [5]
 Chauvin v. Tandy Corporation, 984 F.2d 695, 697 (5th Cir.1993)
 
 
 [6]
 Cavallini v. State Farm Mutual Auto Insurance Company, 44 F.3d 256, 266 (5th Cir.1995)
 
 
 [7]
 Id
 
 
 [8]
 Brief of appellant at 20
 
 
 [9]
 Alternatively, Anros argues that genuine issues of material fact remain and neither party was entitled to summary judgment. The defendant, however, is unable to point to a genuine factual dispute as to a material fact. We, therefore, affirm the district court's decision that BSC was entitled to judgment as a matter of law
 
 
 [10]
 Stephanz v. Laird, 846 S.W.2d 895, 901 (Tex.Ct.App.1993)
 
 
 [11]
 Id.; see also, FDIC v. Coleman, 795 S.W.2d 706, 708-09 (Tex.1990); Crutcher v. Continental National Bank, 884 S.W.2d 884, 886 (Tex.Ct.App.1994)
 
 
 [12]
 Stephanz, 846 S.W.2d at 901
 
 
 [13]
 Id. at 901-02
 
 
 [14]
 Corpus Christi v. Bayfront Associates, 814 S.W.2d 98, 108-09 (Tex.Ct.App.1991)
 
 
 [15]
 Stephanz, 846 S.W.2d at 902
 
 
 [16]
 Record, exhibit I at 3
 
 
 [17]
 Baker v. International Record Syndicate, 812 S.W.2d 53, 55 (Tex.Ct.App.1991); see also, Enclave, Inc. v. Resolution Trust Corporation, 986 F.2d 131, 134 (5th Cir.1993); In re McConnell, 934 F.2d 662, 666 (5th Cir.1991)
 
 
 [18]
 Enclave, 986 F.2d at 134; Baker, 812 S.W.2d at 55; McConnell, 934 F.2d at 666
 
 
 [19]
 Baker, 812 S.W.2d at 55
 
 
 [20]
 Id. In its brief, Anros refers to this block to the enforcement of a liquidated damages clause as unconscionability. The cases it cites, however, indicate Anros is referring to the "actual damages" test articulated in Baker
 
 
 [21]
 Id
 
 
 [22]
 Enclave, 986 F.2d at 134 (quoting Zucht v. Stewart Title Guaranty Company, 207 S.W.2d 414 (Tex.Ct.App.1947))
 
 
 [23]
 See, e.g., In re McConnell, 934 F.2d 662, 666 (5th Cir.1991)
 
 
 [24]
 Baker, 812 S.W.2d at 55; Zucht v. Stewart Title Guaranty Company, 207 S.W.2d 414, 419 (Tex.Ct.App.1947)
 
 
 [25]
 Appellant's brief at 46. See, Sipco Services Marine Inc. v. Wyatt Field Services Co., 857 S.W.2d 602 (Tex.Ct.App.1993); Cook Consultants v. Larson, 700 S.W.2d 231 (Tex.Ct.App.1985); Stone v. Lawyers Title Insurance Corp., 554 S.W.2d 183 (Tex.1977)
 
 
 [26]
 Regent International Hotels v. Las Colinas Hotels Corporation, 704 S.W.2d 101, 105 (Tex.Ct.App.1985)
 
 
 [27]
 Anros argues that, in addition to establishing the $5 million letter of credit, it provided the Bank with guaranties. These guaranties, however, did not benefit BSC and had no impact on the contractual obligations already established in the buyout agreement or the alleged detrimental reliance