Affirmed and Memorandum Opinion filed July 31, 2008








Affirmed and Memorandum
Opinion filed July 31, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00936-CV

____________

 

CHIU MOON CHAN AND ELLA Y. CHAN, Appellants

 

V.

 

MONTEBELLO DEVELOPMENT COMPANY,
L.P. AND STEWART TITLE COMPANY, Appellees

 



 

On Appeal from the 151st
District Court

Harris County, Texas

Trial Court Cause No. 2005-73439

 



 

M E M O R A N D U M   O P I N I O N








In this case, the buyers of a residential high-rise
condominium signed a purchase contract with the seller and deposited their
earnest money with a title company.  However, the buyers did not close on the
property as provided in the purchase contract, and, at the seller=s instruction, the
title company transferred the buyers= earnest money to
the seller.  The buyers, Chiu Moon Chan and Ella Y. Chan, later sued the
seller, Montebello Development Company, L.P. (AMontebello@) and the title
company, Stewart Title Company (AStewart Title@), for the return
of their earnest money.  The trial court granted summary judgment in favor of
Montebello and Stewart Title, and declared that the purchase contract was
terminated and Montebello was entitled to keep the earnest money as liquidated
damages under the purchase contract.  

In eight issues on appeal, the Chans contend that the trial
court erred by:  (1) granting summary judgment on the appellees= declaratory
judgment action; (2) determining that the amount of the earnest money, $92,000,
was an accurate estimate of actual damages; (3) granting summary judgment when
the purchase contract was void for lack of mutuality of obligation; (4)
granting summary judgment in favor of Montebello on all of the Chans= claims for
affirmative relief; (5) granting summary judgment in favor of Stewart Title on
all of the Chans= claims for affirmative relief; (6)
awarding attorneys fees of $20,000 because the award is inequitable and unjust;
(7) failing to exclude the affidavit of George Gibson as evidence in support of
the attorney=s fee award; and (8) failing to exclude the affidavit
of Jeanette Harris as summary judgment evidence.  

For the reasons stated below, we affirm.

Factual
and Procedural Background

Montebello is the owner and developer of the Montebello
Condominium, a thirty-story residential condominium building located in Uptown
Park in Houston, Texas.  In February 2002, Montebello and the Chans entered
into a Purchase Contract (the AContract@) for the sale and
purchase of a condominium unit on the twenty-third floor of the building for a
total purchase price of $920,000.  As provided in the Contract, the Chans
deposited earnest money, defined in the purchase contract as the AInitial Payment,@of $92,000 with
Stewart Title.  The Chans had negotiated the Initial Payment down from twenty
percent to ten percent of the total purchase price.  Ultimately, however, the
Chans failed to close on the unit, and Stewart Title delivered the Initial
Payment to Montebello.








In November 2005, the Chans sued Montebello and Stewart
Title to recover the Initial Payment, asserting claims of unjust enrichment, breach
of contract, and tortious interference with contract against Montebello.  The
Chans alleged conversion and negligence against both Montebello and Stewart
Title, and as to Stewart Title only, the Chans alleged promissory estoppel,
fraud, negligent misrepresentation, and breach of fiduciary duty.  The Chans
sought actual and punitive damages, and attorney=s fees.[1] 
Montebello and Stewart Title answered, and Montebello also filed a counterclaim
asserting breach of contract and requesting a declaratory judgment that it was
entitled to the Initial Payment as liquidated damages under the Contract. 
Montebello requested attorney=s fees as provided in the Contract and
under the Declaratory Judgments Act.  See Tex. Civ. Prac. & Rem. Code ' 37.009.  The
Chans answered and alleged as affirmative defenses fraud, misrepresentation,
waiver, mistake, failure to mitigate, non-occurrence of conditions precedent,
and denial of pre-judgment interest.








Montebello and Stewart Title moved for summary judgment
against all of the Chans= claims and sought a declaration that, as
a matter of law, the Contract was terminated and Montebello was entitled to the
Initial Payment as liquidated damages.  Among other things, Montebello asserted
that it substantially completed the construction of the unit, but the Chans did
not comply with the Contract=s obligations, including scheduling a
final walk-through inspection and timely closing on the property.  Appellees
also asserted that Stewart Title properly delivered the Initial Payment to
Montebello in accordance with the Contract.  The Chans responded and objected
to Montebello and Stewart Title=s summary judgment proof,[2]
but they did not deny that they failed to comply with their obligations under
the Contract to purchase the unit.  Instead, they asserted that, after entering
into the Contract, they encountered financial difficulties and requested a
refund of the Initial Payment, and they also offered to reimburse Montebello
for an Aagreed amount of
reasonable actual damages.@  However, Montebello refused to refund
any amount of the Initial Payment.  The Chans further asserted that the
contractual provision permitting Montebello to retain the Initial Payment in
the event of the purchaser=s default was unreasonable and an
unenforceable penalty. 

After the parties submitted additional briefing, the trial
court entered a judgment in favor of Montebello and Stewart Title.  In the
judgment, dated September 27, 2006, the trial court declared that the Contract
was terminated and Montebello was entitled to keep the Initial Payment as
liquidated damages under the Contract, and awarded attorney=s fees of $20,000
to Montebello and additional attorney=s fees of $7,500
if an appeal is filed in the court of appeals and $7,500 if a petition for
review is filed in the Texas Supreme Court.  The trial court included in the
judgment language demonstrating that it expressly intended to dispose of all
parties and claims and that the judgment was final.[3]  
This appeal followed.

Analysis
of the Chans= Issues

I.        Is the
Liquidated Damages Provision an Unenforceable Penalty?








In their first two issues, the Chans contend that the trial
court erred in granting summary judgment on Montebello=s claim for
declaratory judgment and awarding it the $92,000 Initial Payment as liquidated
damages under the Contract, because the amount is excessive and constitutes an
illegal penalty.[4] 
We disagree.

A.      The
Contract Provision at Issue

The Contract provided for liquidated damages in the event
of default by the purchaser in the following provision:

In the event of
any default by Purchaser under this Contract, Seller may (i) terminate this
Contract, in which event the Initial Payment shall be delivered to Seller as
liquidated damages and not as a penalty because of the uncertainty and
difficulty of ascertaining and measuring Seller=s actual damages,
and neither Purchaser nor Seller shall have any further rights or obligations
under this Contract, (ii) enforce specific performance of this Contract, or
(iii) seek damages or any other available remedies.

B.      The
Applicable Law








The test for determining whether a provision is valid and
enforceable as liquidated damages is (1) if the damages for the prospective
breach of the contract are difficult to measure; and (2) the stipulated damages
are a reasonable estimate of actual damages.  Phillips v. Phillips, 820
S.W.2d 785, 788 (Tex. 1991) (citing Rio Grand Valley Sugar Growers, Inc. v.
Campesi, 592 S.W.2d 240, 342 n.2 (Tex. 1979)); Baker v. Int=l Record
Syndicate, Inc., 812 S.W.2d 53, 55 (Tex. App.CDallas 1991, no
writ); Naylor v. Siegler, 613 S.W.2d 546, 547 (Tex. Civ. App.CFort Worth 1981,
no writ).  Generally, the question of whether a contractual provision is an
enforceable liquidated damages provision or an unenforceable penalty is a
question of law for the court and is to be determined as of the time when the
contract was executed. See Phillips, 820 S.W.2d at 788; Zucht v.
Stewart Title Guar. Co., 207 S.W.2d 414, 418 (Tex. Civ. App.CSan Antonio 1947,
writ dism=d); Bourland v. Huffhines, 244 S.W. 847, 849
(Tex. Civ. App.CAmarillo 1922, writ dism=d w.o.j.).  

In determining whether a provision is for a penalty or for
liquidated damages, the intention of the parties should govern. Zucht,
207 S.W.2d at 418.  Merely designating a provision as one for Aliquidated damages@ will not prevent
the court from holding that the provision is in fact a penalty; however, when
it clearly appears from the terms of the contract that it was the intention of
the parties that the sum stated should be treated as providing for liquidated
damages, this intention will be enforced. Elliott v. Henck,  223 S.W.2d
292, 295 (Tex. Civ. App.CGalveston 1949, writ ref=d n.r.e.).

The burden is on the party asserting the defense of penalty
to demonstrate that the contractual provision is an unenforceable penalty
rather than an enforceable liquidated damages provision. See Fluid
Concepts, Inc. v. DA Dallas Apartments Ltd. P=ship, 159 S.W.3d 226,
231 (Tex. App.CDallas 2005, no pet.); Johnson Eng=rs, Inc. v.
Tri-County Water Supply Corp., 582 S.W.2d 555, 557 (Tex. Civ. App.CTexarkana 1979, no
writ); Tri-Cities Constr., Inc. v. Am. Nat=l Ins. Co., 523 S.W.2d 426,
428 (Tex. Civ. App.CHouston [1st Dist.] 1975, no writ).  In
order to meet this burden, the party asserting the defense is required to prove
the amount of the other parties= actual damages, if any, to show that the
liquidated damages are not an approximation of the stipulated sum. Johnson
Eng=rs, Inc., 582 S.W.2d at 557.  If the liquidated
damages are shown to be disproportionate to the actual damages, then the
liquidated damages must be declared a penalty and recovery limited to the
actual damages proven. Id. 








Texas courts have consistently held that damages for breach
of a contract to buy or sell real estate are A>uncertain and not
easily estimated with accuracy.=@  Thanksgiving
Tower Partners v. Anros Thanksgiving Partners, 64 F.3d 227, 232 (5th Cir.
1995) (citing Enclave, Inc. v. Resolution Trust Corp., 986 F.2d 131,
134(5th Cir. 1993) (quoting Zucht, 207 S.W.2d at 419)).  For example, in
Zucht, the court explained:  AIt has been held,
time and again, that a provision for liquidated damages in a contract for the
sale and purchase of real estate is proper as being a transaction in which the
damages for the breach thereof are uncertain and not easily estimated with
accuracy.@ Zucht, 207 S.W.2d at 419 (collecting cases). 
Texas courts have recognized that often A[i]t is impossible
to forecast the damages which might flow to the seller of real property in the
event of breach of the contract by the purchasers,@ because A[r]eal property
has a fluctuating value@ and A[t]here is no way
to ascertain at any given time what the value of a particular tract of real
property might be in the future.@  Naylor,
613 S.W.2d at 547.

C.      The
Liquidated Damages Provision is Not an Unenforceable Penalty

In support of their contention that the Contract=s liquidated
damages provision is an unenforceable penalty, the Chans stress the following
language from Phillips:

The right of competent parties to
make their own bargains is not unlimited.  The universal rule for measuring
damages for the breach of a contract is just compensation for the loss or
damage actually sustained.  By the operation of that rule a party generally
should be awarded neither less nor more than his actual damages.  A party has
no right to have a court enforce a stipulation which violates the principle
underlying that rule.

Phillips, 820 S.W.2d at
788.  Consequently, the Chans argue the trial court erred because it Anever inquired
into the evidence of actual injuries to attempt to do justice between the
parties,@ and as a result,
Montebello received a windfall.  See id. (noting that, although the
question whether a contractual provision is enforceable is a question of law,
sometimes factual issues must be resolved before the legal question can be
decided).








The Chans, relying on a 2006 property tax record from the
Harris County Appraisal District, assert that information concerning Montebello=s actual damages
was readily available.  However, evidence that a property sold at a later date
for the same price, or even at a profit, is no evidence that a provision is an
unreasonable stipulation as to contemplated damages. Zucht, 207 S.W.2d
at 419; Thanksgiving Tower Partners, 64 F.3d at 232B33; see also
Baker, 812 S.W.2d at 55 (AEvidence related to the difficulty of
estimation and the reasonable forecast must be viewed as of the time the
contract was executed.@).  The Chans also speculate that
Montebello must possess other information that would show actual damages, such
as Afinancial
information with respect to the construction and occupancy of the property@ and Amarketing
allowances for each Unit.@  However, they submitted no evidence of
any such information in response to the motion for summary judgment.[5] 
The Chans further speculate as to the type of actual damages that would be
incurred by Montebello, such as Aremarketing
expenses@ and Adepreciation
expense,@ and conclude that
the amount of $92,000 is Asuch a bad estimate of damages, that
Montebello reaped a windfall profit off of the misfortune@ of the Chans, but
cite no evidence or authorities in support of this conclusion.  








Moreover, the primary authorities the Chans do cite are
distinguishable.  First, in Phillips, the Texas Supreme Court considered
a contractual provision in which one party agreed to pay the other party as
liquidated damages ten times the actual damages. See Phillips,
820 S.W.2d at 787, 789.  The Court determined that such a provision involved no
fact issues, as it could not meet either part of the test for an enforceable
liquidated damages provision. Id. at 789.  The Chans also cite Flores
v. Millennium Interests, Ltd., 185 S.W.3d 427, 431 (Tex. 2005), to support
their contention that the trial court erred because the amount of liquidated
damages, $92,000, was excessive.  In that case, the Court was asked, on
certified questions from the Fifth Circuit, to construe certain statutes
applying to contracts for deed. Id. at 428.  The Court noted that, while
an amount stipulated in advance as an acceptable measure of damages may be
either an enforceable liquidated damages provision or an unenforceable penalty
under the common law, the same Adoes not always hold true for statutes.@ Id. at
431. Consequently, the Court determined that a statutory Aliquidated damages@ provision for
noncompliance, when invoked, was penal in nature.  Id. at 433.  Here, in
contrast, the contractual provision at issue is in no way comparable to the
provision at issue in Phillips or the statutes considered in Flores,
and so neither case supports the Chans= claim. 

The Chans also complain that Montebello has offered no
legal authority or extrinsic evidence to support its assertion that damages
would be impossible to ascertain or that the liquidated damages amount was a
reasonable estimate of actual damages.  However, as the party asserting the
affirmative defense of penalty, the burden was on the Chans, not Montebello, to
demonstrate that the Contract=s liquidated damages provision was an
unenforceable penalty.  See, e.g., Fluid Concepts, Inc., 159
S.W.3d at 231; Johnson Eng=rs, Inc., 582 S.W.2d at
557; Tri-Cities Constr., Inc., 523 S.W.2d at 428.








The Chans, as the party with the burden to prove their
affirmative defense of penalty, cite no authorities to contradict the
longstanding recognition that damages for the breach of a contract to buy or
sell real estate are uncertain and not easily estimated. See, e.g., Thanksgiving
Tower Partners, 64 F.3d at 232; Zucht, 207 S.W.2d at 419; Naylor,
613 S.W.2d at 547.  Further, the Chans agreed to the liquidated damages
provision, which clearly provides that, in the event of the Chans= default, the
Initial Payment shall be delivered to Montebello Aas liquidated
damages and not as a penalty@ because of Athe uncertainty
and difficulty of ascertaining and measuring@ Montebello=s actual damages. 
The provision plainly reflects the intent of the parties to provide for
liquidated damages in the amount of the Initial Payment. See Elliott,
223 S.W.2d at 295 (holding that terms of agreement to purchase beach-front
property plainly expressed the parties= intention that
the earnest money constituted liquidated damages and stating that A[h]ere the amount
of the damages that would be sustained by the seller by a breach was uncertain
in the same sense that the amount of the damages for a breach of a contract for
the sale of real estate is generally uncertain.@).

Moreover, the Chans negotiated the amount of the Initial
Payment down from twenty percent of the purchase price of the unit to ten
percent, further limiting their liability under the provision.  The negotiated
amount of earnest money, $92,000, or ten percent of the total purchase price of
$920,000, is a reasonable amount of liquidated damages in a real estate
transaction such as this one. See Ashton v. Bennett, 503 S.W.2d 392, 394B95 (Tex. Civ. App.CWaco 1974, writ
ref=d n.r.e.)
(upholding liquidated damages provision entitling seller to approximately
sixteen percent of purchase price); Thanksgiving Tower Partners, 64 F.3d
at 232 (holding that $5 million was a reasonable liquidated damage amount
despite an internal memorandum stating that the anticipated damages were only
$1.4 million); see also Aguiar v. Segal, 167 S.W.3d 443, 455B56 (Tex. App.CHouston [14th
Dist.] 2005, pet. denied) (holding that buyers= failure to close
within agreed time constituted a breach of earnest money contracts and sellers
were entitled to terminate contracts and recover earnest money as liquidated
damages).  Consequently, given the information before it, there was no need for
the trial court to resolve additional factual issues before rendering its
decision.

Therefore, we agree with the trial court=s conclusion that,
as a matter of law, the Contract=s provision was an
enforceable liquidated damages provision rather than an unenforceable penalty. 
We overrule the Chans= first two issues.

II.       Is the
Contract Void for Lack of Mutuality of Obligation?








In their third issue, the Chans contend that the trial
court erred in granting summary judgment because the Contract is void for lack
of mutuality of obligation.  According to the Chans, under the Contract,
Montebello was under no obligation to actually provide a unit to them because
the Contract specifically states that Montebello would not Awarranty the
completion of the Unit on any given date.@  Again, we
disagree.

A.      The
Contract Provision at Issue

The provision the Chans rely on is the following:  

7.  Construction
Schedule/Effects of Building Activities.  the Unit is or will be
constructed in accordance with plans and specifications for the Unit to be
prepared by Ziegler Cooper Architects (the APlans and
Specifications@) based on the preliminary plans and
specifications prepared by Ziegler Cooper Architects dated January 9, 2001,
more particularly described on Exhibit AD@ attached hereto
(the APreliminary Plans@), subject to
normal and acceptable tolerances and pursuant to standard building practices
found in residential construction in Houston, Harris County, Texas.  The Preliminary
Plans are located in Seller=s offices.  Purchaser acknowledge that all
drawings and plans constituting the Preliminary Plans are not the final
construction drawings for construction of the Property or the Unit and that
refinements may be made thereto.  Furthermore, the construction of the Unit is
also subject to any changes in the Preliminary Plans and the Plans and
Specifications, materials, fixtures or methods that may be required by federal,
state or local governmental  authority, and other refinements, amendments and
adjustments to the Plans and Specifications by Seller that do not affect the
fair market value of the Property or the Unit.  Seller reserves the right to
substitute materials, fixtures or equipment of equal or better quality.  In
constructing the Unit, Seller shall employ its normal construction schedule,
and does not therefore warrant the completion of the Unit on any given date. 
Accordingly, Seller shall not be liable to Purchaser for any damages resulting
from Seller=s inability or failure to complete
the Unit except for those provided for in Paragraph 17 of the Contract.[]  Purchaser
recognizes that the construction of the Condominium imposes an inherent risk to
the health of trees presently located on the Property and hereby acknowledges
that Seller cannot guarantee the viability of those trees.

(emphasis
added).  Paragraph 17
provides in relevant part that:








In the event that Seller is unable to obtain suitable
construction financing, or should any dispute arise between Seller and Purchase
prior to Closing concerning construction of the Unit or any other matter
relating to the interpretation of this Contract, the Seller shall have the
right, upon written notice to the Purchaser, to terminate this Contract.  In
the event of such termination by Seller, Seller shall cause the Title Company
to return the Initial Payment to Purchaser in full satisfaction of Purchaser=s relief hereunder; no claims or
causes of action shall accrue on behalf of Purchaser; and neither Purchaser nor
Seller shall have any further rights or obligations under this Contract.

(emphasis
in bold added).  Thus, the Chans contend that, under the Contract, Montebello
had no duty to provide anything whatsoever to them, and, therefore, the
Contract is illusory as a matter of law.[6] 


B.      The
Applicable Law








Contracts are valid if there is consideration on each side.
See Air Am. Jet Charter Inc. v. Lawhon, 93 S.W.3d 441, 444 (Tex. App.CHouston [14th
Dist.] 2002, pet. denied) (citing Fed. Sign v. Tex. S. Univ., 951 S.W.2d
401, 409 (Tex. 1997) (stating contract Amust be based upon
a valid consideration, in other words, mutuality of obligation@)).  Consideration
consists of a benefit to the promisor or a detriment to the promisee. N.
Natural Gas Co. v. Conoco, Inc., 986 S.W.2d 603, 607 (Tex. 1998).  There is
no requirement that the consideration on each side be the same. Air Am. Jet
Charter Inc., 93 S.W.3d at 444 (citing N. Natural Gas Co., 986
S.W.2d at 607B08).  Texas courts generally construe contracts in
favor of mutuality of obligation. Tex. Gas Utils. Co. v. Barrett, 460
S.W.2d 409, 412 (Tex. 1970); Young v. Neatherlin, 102 S.W.3d 415, 420
(Tex. App.CHouston [14th Dist.] 2003, no pet.). A contract that
lacks consideration lacks mutuality of obligation and is unenforceable. See
Tex. Gas Utils. Co., 460 S.W.2d at 412. 

C.      The
Contract is Not Void For Lack of Mutuality of Obligation

We do not construe the language of the provision to reflect
a lack of mutuality of obligation as the Chans contend.  The provision the
Chans rely on is included in a section concerning the construction schedule for
the Montebello condominium, which was not completed at the time the Contract
was executed.  This provision is intended to recognize the myriad of factors
that can affect the construction process and to provide flexibility to
Montebello rather than to obligate it to complete the construction on a
specific date or risk breaching the contract.  It does not mean that Montebello
has no obligation to perform at all.  Montebello agreed to sell a specific
condominium unit and the Chans agreed to purchase the unit.  As a result,
Montebello removed the unit from the market and was thereafter precluded from
entertaining other offers for it.  Montebello also was required to sell the
unit to the Chans at the specified sales price, which the Chans agreed to pay. 
Therefore, we conclude that the Contract is not void for lack of mutuality.  We
overrule the Chans= third issue.

III.      Did the
Trial Court Err in Granting Summary Judgment in Favor of Montebello on All of
the Chans= Claims for Affirmative Relief?

In their fourth issue, the Chans contend that the trial
court erred in granting summary judgment in favor of Montebello on all of their
claims for affirmative relief.  Specifically, the Chans assert that Montebello
did not demonstrate it was entitled to summary judgment as a matter of law
because there are fact issues regarding their affirmative claims of unjust
enrichment, breach of contract, conversion, negligence, and intentional
interference with contract, which the Chans pleaded in their petition.  








To prevail on a traditional motion for summary judgment,
the movant must show that there is no genuine issue as to any material fact and
that it entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546, 548 (Tex. 1985).  A defendant moving for summary judgment must
conclusively negate at least one essential element of each of the plaintiff=s causes of action
or conclusively establish each element of an affirmative defense. Sci.
Spectrum, Inc., v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  Once the
movant establishes a right to judgment as a matter of law, the burden shifts to
the non-movant to produce evidence raising a genuine issue of material fact.
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678B79 (Tex. 1979). 
Declaratory judgments decided by summary judgment are reviewed under the same
standards of review that govern summary judgments generally. Lidawi v.
Progressive County Mut. Ins. Co., 112 S.W.3d 725, 730 (Tex. App.CHouston [14th
Dist.] 2003, no pet.).

Here, the Chans do not dispute that they failed to purchase
the condominium unit as they were obligated to do under the Contract with
Montebello, and do not dispute that Montebello was entitled to some measure of
damages as a result.  The only dispute between the Chans and Montebello was
whether the Contract=s liquidated damages provision was
enforceable.  We have already held that the liquidated damages provision was
enforceable, and that Montebello was therefore entitled to keep the Initial
Payment.  All of the Chans= claims against Montebello were premised
upon Montebello=s allegedly wrongful retention of the
Initial Payment. Therefore, Montebello demonstrated that, as a matter of law,
it was entitled to summary judgment, and the burden then shifted to the Chans
to raise a genuine issue of material fact sufficient to defeat summary
judgment.  However, although the Chans pleaded the affirmative claims they
identify in their petition, they did not assert any of them in response to
appellees= motion for summary judgment, and they point to no
summary judgment evidence raising a fact issue on the claims.  

We therefore overrule the Chans= fourth issue.

IV.      Did the
Trial Court Err in Granting Summary Judgment in Favor of Stewart Title on All
of the Chans= Claims for Affirmative Relief?








In their fifth issue, the Chans contend that, although
Stewart Title was a party to the motion for summary judgment, the motion did
not address the Chans= claims against Stewart Title, which were
different than the claims against Montebello.  Specifically, the Chans assert
that their claims against Stewart Title were based upon an AEarnest Money
Receipt@ provided to the
Chans, which stated that the Chans= earnest money
would not be dispersed unless all parties agreed.[7] 
Despite this representation, the Chans contend, Stewart Title paid the earnest
money (the Initial Payment) to Montebello.  The Chans asserted claims against
Stewart Title for conversion, negligence, promissory estoppel, fraud, negligent
misrepresentation, and breach of fiduciary duty[8]
based on these alleged facts. 

The Chans= argument in this issue is the same as
that made in the previous issue against Montebello.  The Chans assert that fact
issues were raised on each of their claims against Stewart Title precluding
summary judgment in its favor.  However, the Chans did not raise these claims
in response to appellees= summary judgment motion or present any
evidence to demonstrate that a genuine issue of material fact existed. 
Moreover, in appellees= motion for summary judgment, appellees
showed that, in response to Montebello=s instruction,
Stewart Title delivered the Initial Payment to Montebello in accordance with
paragraph 2(d) of the Contract, which provided that Athe Title Company
shall cause the Initial Payment to be delivered promptly to whichever party
shall become entitled thereto pursuant to the terms of this Contract and
without further approval from either party.@  








As we have previously discussed, the trial court correctly
found that Montebello was entitled to keep the Initial Payment as liquidated
damages under the Contract.  Further, appellees demonstrated that, under the
Contract, the Chans agreed that Stewart Title was to deliver the Initial
Payment to Montebello Awithout further approval from either
party.@  Thus, the trial
court could have correctly concluded that Stewart Title properly delivered the
Initial Payment to Montebello.   At that point, the burden shifted to the Chans
to raise a genuine issue of material fact on their claims against Stewart
Title, all of which were based on the allegedly wrongful delivery of the
Initial Payment to Montebello without the Chans= consent. In the
Chans= response to
appellees= motion for summary judgment, they attached a copy of
the Earnest Money Receipt and discussed it in their recitation of the facts,
but they did not make any legal argument concerning the document or argue that
paragraph 2(d) of the Contract did not apply.  Moreover, the Chans did not
assert any of their claims in response to appellees= motion for
summary judgment, and, other than the AEarnest Money
Receipt,@ they point to no
summary judgment evidence raising a fact issue on the claims. 

We therefore overrule the Chans= fifth issue.

V.      Did the
Trial Court Abuse Its Discretion in Awarding Attorney=s Fees and
Considering Attorney=s Affidavit
Concerning Fees?

In their sixth issue, the Chans contend that the award of
attorney=s fees is
inequitable and unjust under the Declaratory Judgments Act. See Tex. Civ. Prac. & Rem. Code ' 37.009 (AIn any proceeding
under this chapter, the court may award costs and reasonable and necessary
attorney=s fees as are
equitable and just.@).  In their seventh issue, they contend
that the trial court erred in failing to sustain their objections to the
affidavit of George Gibson in support of the attorney=s fees.  The Chans
brief these issues together, and so we will consider them together.  








First, the Chans argue that it is fundamentally inequitable
and unjust that Montebello, Awho hasn=t sustained any
actual damages, and has already been awarded $92,000, should be awarded an
additional $20,000 attorneys fees.@  The Chans
complain that, Afor whatever reason [the Chans] did not
close, they attempted to negotiate the release of the contract,@ but Montebello
took advantage of them and pushed forward with the scheduling of the walk through
and closing with the specific intent of obtaining the earnest money.  The crux
of the Chans= argument appears to be that, even though Montebello
prevailed on its claim that it was entitled to keep the liquidated damages as
provided in the Contract (and agreed to by the Chans), Montebello is not
entitled to attorney=s fees to compensate it for being required
to litigate the issue, because it allegedly did not incur actual damages.  The
Chans cite no evidence or authorities to support this argument; therefore, we
do not consider it.  See Tex. R.
App. P. 38.1(h); Sunnyside Feedyard, L.C. v. Metro. Life Ins. Co.,
106 S.W.3d 169, 173 (Tex. App.CAmarillo 2003, no pet.) (AFailure to either
cite authority or advance substantive analysis waives the issue on appeal.@).  Moreover,
Montebello also sought reasonable attorney=s fees as provided
under the Contract,[9]
and the Chans do not challenge this alternative basis for the award.








Next, the Chans contend that the trial court should have
sustained the Chans= objections to the affidavit of George
Gibson, one of appellees= attorneys, in support of the attorney=s fees, and not
considered it in determining the amount of attorney=s fees to award.[10] 
The Chans argue that the affidavit is conclusory because the amounts requested
are unreasonable, the affidavit does not reflect how much time was spent on the
case, and statements concerning anticipated fees for appeal and post-judgment
motions and other actions are speculative and Anot readily
controvertible.@ See Tex. R. Civ. P. 166a(c) (AA summary judgment
may be based on uncontroverted testimonial evidence of an interested witness,
or of an expert witness as to subject matter concerning which the trier of fact
must be guided solely by the opinion testimony of experts, if the evidence is
clear, positive and direct, otherwise credible and free from contradictions and
inconsistencies, and could have been readily controverted.@); Trico Techs.
Corp. v. Montiel, 949 S.W.2d 308, 310 (Tex. 1997) (same).  We review a
trial court=s decision to admit or exclude evidence for abuse of
discretion.  Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43
(Tex. 1998).  We likewise review the allowance of attorney=s fees for abuse
of discretion. Ragsdale v. Progressive Voters League, 801 S.W.2d 880,
881 (Tex. 1990).

As the Texas Supreme Court explained in Montiel, the
mere fact that an affidavit is self-serving does not necessarily make the
evidence an improper basis for summary judgment.  See Montiel, 949
S.W.2d at 310.  Further, whether the evidence contained in an affidavit Acould have been
readily controverted@ does not mean that the summary judgment
evidence could have been easily and conveniently rebutted, but rather indicates
that the testimony could have been effectively countered by opposing evidence. Id. 
The trial court, as fact finder, may award attorney=s fees as a matter
of law based on the uncontradicted testimony of an interested witness, Aespecially when
the opposing party has the means and opportunity of disproving the testimony or
evidence and fails to do so.@ Ragsdale, 801 S.W.2d at 882.








As one of appellees= attorneys, Gibson
averred that he was licensed to practice in Texas and had previously
represented clients in connection with commercial litigation in Harris County,
he was familiar with the fees customarily charged by attorneys in Harris county
for handling similar suits, and was familiar with the attorneys= services normally
required for the proper prosecution of lawsuits like the present one.  Gibson
identified and listed the specific legal services performed in connection with
the prosecution of the lawsuit, and opined that additional hours of his time
would be necessary for post-judgment motions and to enforce the judgment.  He
further opined that, taking into consideration the complexity of the case, the
legal questions involved, and the time involved, a reasonable attorney=s fee for the
legal services rendered to Montebello would be $20,000.  Finally, he opined
that a reasonable additional attorney=s fee for an
appeal to the court of appeals would be $10,000, and if Aan application for
writ of error@ is filed in the Texas Supreme Court, a reasonable
additional attorney=s fee would be $10,000.[11] 


The averments in Gibson=s affidavit were
sufficiently clear and could have been readily controverted.  In response, the
Chans asserted their objections, but offered no opposing affidavits or other
contradicting evidence to challenge Gibson=s opinions
concerning the attorney=s fees incurred or to be incurred, and
whether or not they were reasonable or necessary.  Therefore, we cannot say the
trial court abused its discretion to the extent it considered Gibson=s affidavit in
awarding attorney=s fees to Montebello.  We overrule the
Chans= sixth and seventh
issues.  

VI.      Did the
Trial Court Err in Granting Summary Judgment by Failing to Exclude the
Affidavit of Jeanette Harris? 








Lastly, in their eighth issue, the Chans contend that the
trial court erred in granting summary judgment by failing to exclude the
affidavit of Jeanette Harris, an employee of The Interfin Companies LP, a
partner of Montebello.  Appellees submitted Harris=s affidavit to
support the merits of their motion for summary judgment.  In her affidavit,
Harris made statements concerning Montebello=s substantial
completion of the unit and its performance of all work and obligations under
the contract, the Chans= failure to respond to Montebello=s attempt to
contact the Chans, the Chans= failure to contact Montebello to schedule
a specific time for or attend the closing, and the parties= rights and obligations
under the Contract.  The Chans contend that these statements are merely factual
and/or legal conclusions, no extrinsic evidence was offered to support them,
and they cannot be readily controverted.[12] 


Harris averred that she was an employee of The Interfin
Companies LP, a partner of Montebello, and that the facts stated in her
affidavit were within her personal knowledge and were true and correct.  Her
factual statements were supported by documents and correspondence attached to
appellees= motion for summary judgment, which she referenced in
her affidavit, and which reflected that Harris either sent the document, was
the recipient of the document, or was copied on the document.  Moreover,
although the Chans submitted the affidavit of Mrs. Chan in response to the
motion for summary judgment, Mrs. Chan did not contradict any of the factual
statements Harris made concerning Montebello=s substantial
completion of the unit, the Chans= failure to
communicate with Montebello concerning scheduling, or the Chans= failure to attend
the closing.  Thus, we cannot say that the trial court erred to the extent that
it may have considered the factual statements that could have been controverted
by the Chans, but were not. 








Although some of Harris=s statements
concerning the legal effect of the Contract, such as her assertion that
Montebello was entitled to recover its reasonable attorney=s fees and court
costs in accordance with the Contract, constituted legal conclusions, nothing
in the record demonstrates that the trial court considered any conclusory
statements or based its decision on them.  Moreover, even if we assume the
trial court considered any conclusory statements, because the Chans did not
deny that they failed to close on the unit as they were obligated to do under
the Contract, many, if not all, of those statements are unnecessary to the
trial court=s decision.  We will not reverse a trial court=s judgment because
of an erroneous evidentiary ruling unless the ruling probably caused the
rendition of an improper judgment. See Horizon/CMS Healthcare Corp. v. Auld,
34 S.W.3d 887, 906 (Tex. 2000); Owens‑Corning Fiberglas Corp., 972
S.W.2d at 43; Tex. R. App. P. 44.1(a).
The complaining party must usually show that the whole case turned on the
evidence at issue. City of Brownsville v. Alvarado, 897 S.W.2d 750, 753‑54
(Tex. 1995).  The Chans have not demonstrated how the complained-of statements
in the affidavit, if considered by the trial court, probably caused the
rendition of an improper judgment.  Therefore, we overrule the Chans= eighth issue.

Conclusion

We overrule the Chans= issue and affirm
the trial court=s judgment.

 

 

Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed July 31, 2008.

Panel consists of
Justices Fowler, Frost, and Senior Justice Price.*

.

 

 

 

 

 

______________________________

*   Senior Justice
Frank C. Price sitting by assignment.









[1]  The Chans also asserted that they were entitled to
arbitration under the Contract, but arbitration is not an issue in this appeal.





[2]  The record does not reflect that the trial court
ruled on the Chans= objections to the summary judgment proof.  Additionally,
although it appears the trial court held a hearing on the motion for summary
judgment, no reporter=s record of the hearing is included in the record.





[3]  The language indicating finality was as follows:

 

It is further

ORDERED that Defendants are granted judgment in their
favor as to all claims and cause of actions by Chiu Moon Chan and Ella Y. Chan,
and Chiu Moon Chan and Ella Y. Chan shall take nothing by their claims and
cause of actions in this case.  It is further

ORDERED that Defendants shall be entitled to all writs
and processes necessary to enforce this judgment.  It is further

ORDERED that all other relief not specifically granted herein is denied
and that this is a final appealable judgment.





[4]  As an initial matter, appellees assert that, because
penalty is an affirmative defense and the Chans failed to plead it, the issue
is waived.  However, the Chans raised the issue of penalty in its response to
appellees= motion for summary judgment and in supplemental
responses in opposition to the motion.  We therefore conclude the issue is
preserved for appeal.  See Keck, Mahin & Cate v. Nat=l Union Fire Ins. Co., 20 S.W.3d 692, 699 (Tex. 2000) (raising affirmative
defense in response to motion for summary judgment preserved issue for
appeal).  Moreover, the record does not reflect that appellees objected to the
lack of formal pleading in their responses or otherwise.  Unpleaded claims or
defenses that are tried by express or implied consent of the parties are
treated as if they had been raised by the pleadings.  Roark v. Stallworth
Oil & Gas, Inc., 813 S.W.2d 492, 495 (Tex. 1991) (applying rules of
error preservation and trial by consent to issues raised in summary judgment).





[5]  In their response, the Chans  incorporated by
reference a motion to compel and motions to continue the hearing on appellees= motion for summary judgment, and argued that
Montebello=s failure to respond to their discovery requests
denied them the opportunity to fully present summary judgment evidence to
support their claims and defenses.  However, the referenced motions do not
appear in the record, and the Chans do not argue on appeal that the trial court
erred by failing to compel any discovery or failing to grant a continuance.





[6]  Appellees contend that the Chans failed to preserve
this issue for appeal because they did not raise this issue in their response
to appellees= motion for summary judgment.  However, the Chans did
raise the issue in a supplemental response filed before the trial court ruled
on the motion, and appellees did not object to it.  Therefore, under the facts
of this case, we conclude the Chans preserved the issue for appeal. See
Tex. R. Civ. P. 166a(c).





[7]  The relevant portion of the document entitled AEarnest Money Receipt@ provides as follows:  ANotwithstanding
any terms of the Contract, Stewart Title does not agree to pay any portion of
the Earnest Money to anyone unless uniform written authority to do so is given
by all parties to the Contract.@  It is signed
only by a representative of Stewart Title.





[8]  In this issue, the Chans also contend that they sued
Stewart Title for breach of contract, but the breach of contract claim in the
Chans= original petitionCthe
only petition of theirs in the recordCis
directed only to Montebello.





[9]  The Contract provided as follows:  AIf either party employs an attorney or attorneys to
enforce the terms of this Contract, either by arbitration, litigation or
negotiation, the losing party agrees to reimburse the prevailing party for
reasonable attorneys= fees, arbitration fees, court costs and expenses
incurred.@  Montebello pleaded for attorney=s fees under the Contract and the Declaratory
Judgments Act, and sought attorney=s
fees in the motion for summary judgment under the Contract and Texas Civil
Practice and Remedies Code sections 38.001 and 37.009.





[10]  The record does not reflect that the trial court ruled on the Chans= objections.  We do not presume that objections to summary judgment
evidence were overruled when a trial court grants a summary judgment.  Seidner
v. Citibank (S.D.) N.A., 201 S.W.3d 332, 335 n.2 (Tex. App.CHouston [14th Dist.] 2006, pet. denied).  But an
objection to the substance of a summary judgment affidavit, rather than a
defect in the form, is not waived by failure to obtain a ruling from the trial
court on the objection. See, e.g., Wadewitz v. Montgomery, 951 S.W.2d
464, 466 (Tex. 1997) (AConclusory statements by an expert are insufficient to
support or defeat summary judgment.@).





[11]  We note that the trial court awarded the lesser
amounts of $7,500 for additional attorney=s
fees in its judgment.





[12]  The Chans also argue that Harris does not explain
how she has personal knowledge to make several of the statements in her
affidavit.  However, the Chans did not obtain a ruling on their objections to
Harris=s affidavit.  An objection that an affidavit is not
based on personal knowledge is one of form. See Hou-Tex., Inc. v. Landmark
Graphics, 26 S.W.3d 103, 112 n.9 (Tex. App.CHouston [14th Dist.] 2000, no pet.) (AWhether an affiant has personal knowledge and is competent are
objections to form.@).  Thus, the Chans have waived any complaint of lack
of personal knowledge on appeal. See id.